## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHERRY LEE HOOVER,

     Plaintiff,

     v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

     Defendant.

CIVIL ACTION NO. 3:22-cv-00575

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Sherry Lee Hoover, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.  BACKGROUND

On April 5, 2019, Hoover protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of March 4, 2019. Her claims were

initially denied by state agency reviewers on August 26, 2019, and upon reconsideration on November 8, 2019. The plaintiff then requested an administrative hearing.

A telephone hearing was held on July 24, 2020, before an administrative law judge, Gerard W. Langan (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Josephine Doherty. The plaintiff was represented by counsel at the hearing.

On November 6, 2020, the ALJ denied Hoover's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Hoover was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process).

At step one, the ALJ found that Hoover had not engaged in substantial gainful activity since her alleged onset date.

At step two, the ALJ found that Hoover had the severe impairments of: diabetes type 2; coronary artery disease; chronic obstructive pulmonary disorder; and mild osteoarthritis of the left knee.

The ALJ also considered whether Hoover had any severe mental health impairments, but he found none. The ALJ noted that Hoover had medically determinable mental impairments of depression, anxiety, and bipolar disorder, but he found no medical evidence to suggest that these conditions have caused more than minimal limitation in the claimant's ability to perform work-related activities.[1] Based on this, the ALJ found that any mental health impairments were non-severe.

At step three, the ALJ found that Hoover did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Hoover's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After

---

[1] The ALJ considered Hoover's limitations in four broad functional areas as a result of these mental health conditions, finding no more than mild limitations in any of the four areas. (Tr. 78–80.) *See generally* 20 C.F.R. § 404.1520a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

evaluating the relevant evidence of record, the ALJ found that Hoover had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with the following limitations:

> [S]he must avoid unprotected heights. She should never climb ladders or scaffolds. She can climb ramps or stairs frequently, and tolerate no more than occasional exposure to extreme hot temperatures, humidity, vibration, and environmental irritants. In addition, the claimant should be afforded the ability to alternate between sitting and standing every 60 minutes due to back and hip pain.

(Tr. 82.)

In making these factual findings regarding Hoover's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that, since her alleged onset date, Hoover was unable to perform her past relevant work as an assembler of small products, a quality control / garment inspector, picker / packer, a forklift operator, or a composite position of team leader, picker / packer, and forklift operator, as actually or generally performed.

At step five, the ALJ concluded that Hoover was capable of performing work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Hoover was capable of performing the requirements of representative occupations such as routing clerk (DOT # 222.687-022), information clerk (DOT # 237.367-018), or mail clerk (DOT # 209.687-026). Based on this finding, the ALJ concluded that Hoover was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on February 23, 2022, making the ALJ's November 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on April 20, 2022. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Hoover asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to consider all of the relevant evidence, including evidence submitted to the Appeals Council *after* the ALJ's written decision was issued; (2) the ALJ erred at step three in finding that Hoover did not have an impairment or combination of impairments that met or equaled the criteria of Listed Impairment

4.04C, concerning ischemic heart disease with coronary artery disease;
(3) the ALJ failed to properly evaluate prior administrative findings,
including the medical opinion of a non-examining state agency medical
consultant, Candelaria Legaspi, M.D.; (4) the ALJ failed to properly
consider Hoover's subjective allegations regarding her symptoms; and
(5) the ALJ failed to include all of Hoover's claimed limitations or
impairments in the hypothetical posed to a vocational expert at the
administrative hearing.[3]

## A. New Evidence Submitted to the Appeals Council

In this appeal, the plaintiff seeks reversal and remand of an
adverse disability benefits decision under sentence four of § 405(g),
which provides that "[t]he court shall have the power to enter, upon the
pleadings and transcript of the record, a judgment affirming, modifying,
or reversing the decision of the Commissioner of Social Security, with or
without remanding the cause for a rehearing." 42 U.S.C. § 405(g)
(sentence four). In reviewing such a decision under sentence four, the

---

[3] The plaintiff's brief articulated a single, extremely general claim
of error: the ALJ and Appeals Council decisions were not supported by
substantial evidence. Although not clearly articulated by plaintiff's
counsel, a close reading of the brief reveals that this highly generalized
grievance rests on the specific errors we have articulated above.

statute provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* (sentence five).

The plaintiff's brief relies in part on 62 pages of medical records that were submitted to the Appeals Council for consideration on review of the ALJ's written decision. (Tr. 8–69.) But it is well-established that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) (citing *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991)); *Orndorff v. Colvin*, 215 F. Supp. 3d 391, 406 (M.D. Pa. 2016) ("When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g).") (citation omitted); *see also United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963) ("[A] decision may be supported by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body.").

This evidence was presented to the Appeals Council *after* the ALJ issued his written decision. The Appeals Council declined to review the

ALJ's determination that Hoover was not disabled. We have no authority to review that decision by the Appeals Council. *Matthews*, 239 F.3d at 594 ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

This evidence is nevertheless made part of the administrative record to facilitate potential review under sentence six of § 405(g), which provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g) (sentence six). Thus, "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Matthews*, 239 F.3d at 593; *see also id.* at 594 ("The new and material evidence is transmitted with the record so that the district court will have before it the evidence that will be the subject of the remand if the claimant can show good cause why such new and

material evidence was not submitted to the ALJ."); *Orndorff*, 215 F. Supp. 3d at 406 ("Sentence Six requires a remand when evidence is 'new' and 'material,' if the claimant has demonstrated 'good cause' for not having incorporated the evidence into the administrative record.").

Here, the plaintiff has not moved for or otherwise requested a sentence six remand. But even if she had, remand under sentence six would be unwarranted. To merit a sentence six remand,

> the evidence must first be "new" and not merely cumulative of what is already in the record. Second, the evidence must be "material;" it must be relevant and probative. Beyond that, the materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the [Commissioner's] determination. An implicit materiality requirement is that the new evidence related to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally[,] the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.

*Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (per curiam) (citations omitted). In this case, the plaintiff has "failed to allege or establish that this evidence was new, material, and omitted for good cause." *Orndorff*, 215 F. Supp. 3d at 406.

Based on our own review of the evidence at issue, this evidence is clearly immaterial because it relates to Hoover's condition *after* the ALJ rendered his decision, rather than the time period for which benefits were denied. *See Appau v. Comm'r Soc. Sec.*, 847 Fed. App'x 149, 152 (3d Cir. 2021) (per curiam); *Orndorff*, 215 F. Supp. 3d at 406; *see also Szubak*, 745 F.2d at 833. Almost all of the evidence consists of medical records concerning a subsequent deterioration of a previously non-disabling condition—hospital treatment received after Hoover suffered a heart attack on June 17, 2021, seven months after the ALJ's decision. Hoover reported to a hospital emergency department that morning complaining of chest pains, she was admitted, she underwent a cardiac catheterization procedure, and she was discharged to home on June 18, 2021. (Tr. 9–67.) The proffered evidence also includes treatment notes from a January 12, 2021, encounter with a treating psychiatrist (Tr. 68–69), and a December 4, 2020, letter from a treating family nurse practitioner providing a medical opinion on Hoover's physical functional limitations at that time (Tr. 8).[4]

---

[4] The nurse practitioner opined that Hoover could lift no more than 10 pounds and was limited in her ability to stand or walk for long

*(continued on next page)*

Accordingly, Hoover has failed to satisfy the statutory requirements for a sentence six remand, and the court is precluded from further considering the additional evidence submitted to the Appeals Council by Hoover after the ALJ's written decision had been issued on November 6, 2020.

### B. Listing 4.04C: Ischemic Heart Disease with Coronary Artery Disease

Among her severe impairments, the plaintiff suffered from coronary artery disease, diagnosed following a cardiac catheterization procedure in April 2018. (*See* Tr. 590–92.) Based on this, the ALJ considered at step three whether Hoover's impairment met or medically equaled listing 4.04C, concerning ischemic heart disease with coronary artery disease, finding that it did not.[5] Hoover argues that the ALJ erred in this determination and should have found her disabled under

---

periods of time, but the opinion did not specify a duration for that standing or walking limitation.

[5] The ALJ also considered listings 4.04A, concerning ischemic heart disease with a sign- or symptom-limited exercise tolerance test, and 4.04B, concerning ischemic heart disease with three separate ischemic episodes within a 12-month period resulting in angioplasty or bypass surgery, in tandem with listing 4.04C. But the plaintiff does not challenge the ALJ's determination with respect to listings 4.04A or 4.04B.

listing 4.04C.

Mere diagnosis of an impairment included in the listings is insufficient to establish disability. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."). "A claimant bears the burden of establishing each element of a Listing, or 'all of the criteria in the listing.' If even one element is not satisfied, then the ALJ has substantial evidence to conclude that the claimant's impairment is not equivalent and does not meet a Listing." *Weidman v. Colvin*, 164 F. Supp. 3d 650, 659 (M.D. Pa. 2015) (quoting 20 C.F.R. § 404.1525(d)) (citations omitted); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

To meet listing 4.04C, a claimant must show, *inter alia*: (a) 50% to 70% narrowing of various non-bypassed coronary arteries *and* (b) this narrowing resulted in "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.04C.

The plaintiff argues that the findings of her April 2018 cardiac catheterization report satisfy the first element of 4.04C, observing two arteries with 100% stenosis, another with 90% stenosis, and several other partial occlusions. We agree. But notwithstanding her arguments to the contrary, we find that the ALJ reasonably found that Hoover did not establish that she experienced very serious limitations in her ability to independently initiate, sustain, or complete activities of daily living. (Tr. 81.) As noted by the ALJ, Hoover testified that she "cooks, drives, and watches her grandchildren," and she "reported no problems caring for her personal needs, preparing meals daily, cleaning, doing laundry, driving, shopping, handling finances, watching television, and playing cards with her sister." (Tr. 83; *see also* Tr. 86.) The plaintiff's characterization of her activities of daily living as "quite limited" may also be reasonable, but in the absence of compelling evidence of "very serious limitations" in her ability to perform activities of daily living, the ALJ had substantial evidence to conclude that Hoover's impairment due to coronary artery disease did not meet or medically equal the criteria of listing 4.04C. *See Gattus v. Colvin*, Civil No. 1:12-1083, 2014 WL 582261, at *8 (M.D. Pa. Feb. 14, 2014); *see also Oosterkamp v.*

*Kijakazi*, Civil Action No. 20-138, 2021 WL 4459773, at *4 (W.D. Pa. Sept. 29, 2021); *Nerahoo v. Colvin*, Civil Action No. 2:12-cv-06553, 2013 WL 6190197, at *6 (D.N.J. Nov. 26, 2013); *Gonzalez v. Astrue*, Civil Action No. 10-2038, 2011 WL 710492, at *2 (E.D. Pa. Mar. 1, 2011).

Accordingly, we find the ALJ's step-three determination that Hoover did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### C. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)."[T]he possibility of drawing two inconsistent conclusions from

the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Hoover v. Chater*, 99 F.3d 780, 782 & n.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in April 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at \*4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at \*7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at \*7–\*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range

of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior

administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481;
*see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL
1172982, at *8. Under the new regulations, "[t]he two 'most important
factors for determining the persuasiveness of medical opinions are
consistency and supportability,' which are the 'same factors' that formed
the foundation of the treating source rule." *Densberger*, 2021 WL
1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416920c(b);
*Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R.
§§ 404.1520c(c)(1), 416.920c(b) (supportability), and *id.*
§§ 404.1520c(c)(2), 416.920(c)(2) (consistency), *with id.* §§ 404.1527(c)(3),
416.927(c)(3) (supportability), and *id.* §§ 404.1527(c)(4), 416.927(c)(4)
(consistency).[6] An ALJ is specifically required to address these two

---

[6] With respect to supportability, the new regulations provide that
"[t]he more relevant the objective medical evidence and supporting
explanations presented by a medical source are to support his or her
medical opinion(s) or prior administrative medical finding(s), the more
persuasive the medical opinions or prior administrative medical
finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With
respect to consistency, the new regulations provide that "[t]he more
consistent a medical opinion(s) or prior administrative medical
finding(s) is with the evidence from other medical sources and
nonmedical sources in the claim, the more persuasive the medical
opinion(s) or prior administrative medical finding(s) will be." *Id.*
§§ 404.1520c(c)(2), 416.920c(c)(2).

factors in his or her decision. *See* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

In this case, the prior administrative findings included the opinion of a state agency medical consultant, James Butcofski, M.D., who, on initial agency review, found the claimant capable of performing medium work with some postural and environmental limitations. Based on his review of Hoover's medical records, Dr. Butcofski found that Hoover was capable of lifting or carrying up to 50 pounds occasionally and up to 25 pounds frequently. Dr. Bucofski found that Hoover was capable of sitting, standing, or walking up to 6 hours per 8-hour workday. Dr.

Butcofski found that Hoover was capable of frequently balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs, but only occasionally climbing ladders, ropes, or scaffolds. Dr. Butcofski found that Hoover should avoid concentrated exposure to extreme cold, vibration, hazards such as machinery or heights, and pulmonary irritants such as fumes, odors, dusts, gases, or poor ventilation. He found no other physical limitations. (Tr. 139–41; Tr. 149–52.) In evaluating the opinion of Dr. Butcofski, the ALJ found the state agency medical consultant's opinion to be "less than persuasive," finding that other evidence of record supported a more limited exertional profile. (Tr. 86–87.)

The prior administrative findings also included the opinion of a second state agency medical consultant, Candelaria Legaspi, M.D., who, on reconsideration by the agency, found the claimant capable of performing only light work with some postural and environmental limitations. Based on her review of Hoover's medical records, Dr. Legaspi found that Hoover was capable of lifting or carrying up to 20 pounds occasionally and up to 10  pounds frequently. Dr. Legaspi otherwise concurred with Dr. Butcofski's findings regarding exertional,

postural, and environmental limitations. (Tr. 163–65; Tr. 174–76.) In evaluating the opinion of Dr. Legaspi, the ALJ found this second state agency medical consultant's opinion to be "persuasive, as it is consistent with and supported by the medical evidence of record, including diagnostic imaging showing minimal to mild degenerative changes in the left knee and longitudinal evidence of coronary artery disease, as well as the claimant's reports of her daily activities, and her combination of impairments." (Tr. 87.)

The ALJ also considered an opinion by Hoover's treating cardiology provider, Sonya L. Miles, CRNP. On April 22, 2019, Miles completed Section II of an "Employability Assessment Form (PA 1663)" in connection with Hoover's application for state general assistance benefits. On the form, Miles checked a box to indicate her opinion that he was "permanently disabled" because he "[h]as a physical or mental disability which *permanently* precludes any gainful employment" and "is a candidate for Social Security Disability or SSI." In support, she reported a primary diagnosis of Type II diabetes and a secondary diagnosis of chronic obstructive pulmonary disease, and she checked several boxes indicating that her employability assessment was based

on a physical examination, a review of medical records, clinical history, and appropriate tests and diagnostic procedures. (Tr. 782.) The ALJ considered this opinion, but found it had "no persuasiveness, as it is a matter reserved to the Commissioner, and does not provide any associated functional limitations."[7] (Tr. 87.)

The plaintiff has not challenged the ALJ's evaluation of Dr. Butcofski's or NP Miles's opinions.[8] She contends only that the ALJ erred in his reliance on Dr. Legaspi's medical opinion to support his RFC determination that Hoover was capable of performing light work. But the ALJ here properly considered the medical evidence of record

---

[7] The plaintiff does not challenge the ALJ's evaluation of NP Miles's opinion, but we note that, as a statement on an issue reserved to the Commissioner, the ALJ was under no obligation to discuss these statements by Miles *at all* under the new regulations. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) ("Because the evidence listed in paragraph[] . . . (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled . . . , we will not provide any analysis about how we considered such evidence in our determination or decision . . . .").

[8] We note that the ALJ also considered the medical opinions of two state agency psychological consultants in finding that Hoover's medically determinable mental impairments were non-severe at step two. (Tr. 80.) The plaintiff does not challenge the ALJ's step two determination or his evaluation of the psychologists' opinions. We have limited our discussion to the three opinions by medical providers concerning Hoover's physical limitations.

and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of the medical consultant's opinion as well. The plaintiff argues that Dr. Legaspi never actually examined Hoover in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018). Although the plaintiff quibbles with the ultimate outcome of the ALJ's evaluation of this opinion, arguing that various factors support a contrary conclusion, it is clear that the ALJ's findings with respect to Dr. Legaspi's opinion are supported by substantial evidence.

Accordingly, we find the ALJ's evaluation of medical opinions and prior administrative findings concerning the plaintiff's physical limitations, including the medical opinion of Dr. Legaspi, a state agency

medical consultant, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## D. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of Hoover's symptoms, including subjective statements or testimony by Hoover herself. *See generally* 20 C.F.R. §§ 404.1502(i), 416.902(n) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. §§ 404.1529(a), 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or

other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical

evidence in the record. (Tr. 82–87.) This included the plaintiff's statements regarding the limiting effects of her symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while Hoover's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 83.)

The plaintiff argues that the ALJ erred in this symptom evaluation because he failed to expressly consider Hoover's "long and steady" work history. But while the plaintiff's work history must be considered as part of the ALJ's broader view of the record in evaluating his or her symptoms, *see, e.g.*, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("We will consider all of the evidence presented, including information about your prior work record . . . ."), there is no error in an ALJ's failure to explicitly discuss the plaintiff's work history in the ALJ's evaluation of the plaintiff's symptoms. *See Sanborn v. Comm'r of Soc. Sec.*, 613 Fed. App'x 171, 177 (3d Cir. 2015); *Corley v. Barnhart*, 102 Fed. App'x 752, 755 (3d Cir. 2004); *Pelton v. Comm'r of Soc. Sec.*, Civil No. 4:19-CV-

1164, 2020 WL 2992041, at *9 (M.D. Pa. June 4, 2020). As this court has previously explained:

> A claimant's work history is . . . one of the many factors the ALJ is to consider in assessing an individual's subjective complaints, [but] the ALJ is not required to equate a long work history with credibility. Furthermore, it is well established that the ALJ need not address every piece of evidence in the record.

*Pelton*, 2020 WL 2992041, at *9 (citations omitted).

All that remains, then, are quibbles with the outcome of the ALJ's analysis of the evidence of record. But it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and it is clear that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the

relevant law.

### E. Vocational Expert Hypothetical Question

The plaintiff contends that the ALJ's step-five determination is not supported by substantial evidence because the ALJ failed to include all of Hoover's claimed limitations or impairments in the hypothetical posed to a vocational expert at the administrative hearing. Specifically, she contends that the ALJ erred in failing to incorporate a more restrictive sit-stand option, an accommodation for frequent bathroom breaks, and unspecified limitations to mitigate fall risk.

It is well settled, however, that a hypothetical question posed to a vocational expert need only account for credibly established limitations or impairments. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, the ALJ explicitly considered and addressed the plaintiff's severe and medically determinable non-severe impairments, her subjective complaints of pain and other symptoms, and the various medical opinions in the record. The hypothetical posed to the vocational expert included all limitations or impairments the ALJ had found credible. In light of all the evidence, and the ALJ's reasoned consideration of it, we find no error in the ALJ's conclusions with

respect to the plaintiff's functional limitations or impairments.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Hoover was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: September 22, 2023          *s/Joseph F. Saporito, Jr.*
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge